UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FREDERICK STAMPONE,

                Plaintiff,

v.

MICHIGAN SUPREME COURT et al.,

                Defendants.

_____/

Case No. 1:23-cv-1166

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This case is before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Additionally, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. *See* Fed. R. Civ. P. 21. Applying these standards, as set forth in detail below, the Court will dismiss Plaintiff's action due to misjoinder and for failure to state a claim.

## Discussion

**I.       Factual Background**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Michigan. He is serving a sentence of 5 to 25 years following his conviction for kidnapping, in violation of Mich. Comp. Laws § 750.349. Plaintiff was convicted of kidnapping his wife, Marta Jo. Plaintiff names the following Defendants in this action: the Michigan Supreme Court, Michigan Supreme Court Deputy Clerk Julie Clement, the Michigan Court of Appeals, Michigan Court of Appeals Judges James Robert Redford, Mark Boonstra, and Christopher P. Yates, the 17th Circuit Court, 17th Circuit Court Judge Curt A. Benson, Unknown Party (named as Prosecutor Office), Kent County Prosecutor Christopher Becker, Assistant Prosecutors Elizabeth A. Bartlett and Felix Tarango, Detective Deputy Michael Tanis, 63rd District Court, 63rd District Court Judge Sara J. Smolenski, Judge David Murkowski, Attorney J. Nicholas Bostic, Bostic Associates, Attorney Steven C. Haehnel, and the Haehnel Law Firm, Brittan Amann, Benjamine Amann, Jordan Kramer, the Kent County Probate Court, the MDOC, Carson City Correctional Facility Warden Randee Rewerts, Officer Findlay, Sergeant Maiga, S. Reddin, "Classification" "Warehouse," Lieutenant Morris, Officer Harper, Officer S. Fleisher, Office C. Shinabarger, Staff Member Ms. Lyon, Librarian L. Loomis, Dr. Edgar, Officer Giles, Officer Farrell, Employee M. Brown, Charles Egeler Reception and Guidance Center, Officer T. Hardrick, Lieutenant Reno, Carson City Correctional Facility, MDOC Director Heidi Washington, Deputy Director Jeremy Bush, and Officer White.

The allegations in Plaintiff's 50+ page handwritten complaint provide a somewhat scattered glimpse into the difficulties Plaintiff and Marta Jo faced in the years that preceded Plaintiff's conviction. According to Plaintiff, Marta Jo had cancer; with Plaintiff's assistance she was receiving treatment at Memorial Sloan Kettering Cancer Center. (Treatment Schedule, ECF

No. 1-4, PageID.62–69.) According to Plaintiff, Marta Jo's children (or children-in-law), Defendants Brittan Amann and Benjamine Amann (the Amanns), and Defendant Jordan Kramer, swooped in, removed Marta Jo from treatment, coerced her into signing documents, secured a guardianship of Marta Jo in Defendant Kent County Probate Court under Defendant Judge David Murkowski, and placed her in a retirement home to die. Eventually, Marta Jo succumbed to the cancer.

Plaintiff's allegations cover a number of years, from at least 2019 to date. It is difficult to construct a chronological narrative from Plaintiff's allegations. It is apparent, however, that Plaintiff's claims against many of the defendants in this case are essentially the same as the claims Plaintiff raised in greater detail in *Stampone et al., v. Amann et al*., No. 2:20-cv-3874 (D.N.J.). The detail provided in Plaintiff's allegations in the New Jersey case is illuminating; however, the claims against the defendants in the New Jersey case were ultimately dismissed for lack of personal jurisdiction. *Stampone et al., v. Amann et al*., No. 2:20-cv-3874, 2022 WL 2752475 (D.N.J. June 24, 2022); *Stampone et al., v. Amann et al*., No. 2:20-cv-3874 2021 WL 1912642 (D.N.J. Mar. 26, 2021). Additional detail is available in a similar prior action filed by Marta Jo in this Court: *Hieshetter v. Amann et al.*, No. 1:19-cv-725 (W.D. Mich.). The claims in that case—a case to which Plaintiff was not a party—were dismissed for failure to state a claim. *Hieshetter v. Amann et al.*, No. 1:19-cv-725, 2020 WL 358720 (W.D. Mich. Jan. 22, 2020).

The allegations in the New Jersey case and the earlier civil case filed in this Court against the Amanns and Kramer centered on whether Marta Jo was competent and whether decisions regarding her medical treatment, living situation, and assets should be made by the Amanns and Kramer, or Plaintiff and Marta Jo. The general parameters of that dispute are discernible from

3

Plaintiff's complaint in this action; however, the chronology of events is clarified in the other actions.

The dispute regarding who should make decisions regarding Marta Jo's care and living situation ultimately led to the criminal charges against Plaintiff for kidnapping Marta Jo. Many of the allegations in Plaintiff's complaint relate to Plaintiff's criminal prosecution. The courts, judges, prosecutors, defense counsel, witnesses, and law enforcement officer named as defendants[1] participated in Plaintiff's prosecution for kidnapping, the appeals of his conviction, and the collateral attacks on his conviction.

This is not Plaintiff's first action filed in this Court relating to the kidnapping prosecution. On April 5, 2022, while he was detained pending trial, Plaintiff filed a habeas corpus petition contending that his speedy trial rights had been violated and that this Court should, therefore, order his release from pretrial confinement. *See* Petition, *Stampone v. LaJoye-Young* (*Stampone I*), No. 1:22-cv-328 (W.D. Mich. Apr. 5, 2022), (ECF No. 1).. By opinion, order, and judgment entered May 17, 2022, the Court dismissed the petition because release, before trial, on grounds of a speedy trial violation, is not available under 28 U.S.C. § 2241. Rather, the only relief available, if his claims were exhausted, would be to order a speedy trial. Plaintiff's trial actually commenced the day the Court entered the judgment of dismissal. *Stampone v. LaJoye-Young*, No. 22-1464, 2022 WL 3651312, at *1 (6th Cir. Aug. 1, 2022)

---

[1] Those defendants include the Michigan Supreme Court, Michigan Supreme Court Deputy Clerk Julie Clement, Michigan Court of Appeals, the Michigan Court of Appeals Judges James Robert Redford, Mark Boonstra, and Christopher P. Yates, the 17th Circuit Court, 17th Circuit Court Judge Curt A. Benson, Unknown Party (named as Prosecutor Office), Kent County Prosecutor Christopher Becker, Assistant Prosecutors Elizabeth A. Bartlett and Felix Tarango, Detective Deputy Michael Tanis, 63rd District Court, Sara J. Smolenski, Attorney J. Nicholas Bostic, Bostic Associates, Attorney Steven C. Haehnel, and the Haehnel Law Firm. Plaintiff also references defendants, Brittan Amann, Benjamine Amann, Jordan Kramer, and the Kent County Probate Court, Judge David Murkowski in the allegations challenging his criminal prosecution.

(stating "[t]he Kent County Circuit Court records indicate that Stampone's jury trial commenced on May 17, 2022, [and] Stampone was found guilty . . . ."). Plaintiff's appeal of this Court's dismissal of his petition was rendered moot by the commencement of his trial. *Id.*

Plaintiff filed several proceedings in the state appellate courts that purported to attack the timeliness of his trial and then his conviction. First, Plaintiff filed a state habeas corpus action in the Michigan Court of Appeals challenging his pretrial detention. The Michigan Court of Appeals denied relief on July 14, 2021. *Stampone v. Kent Circuit Judge*, No. 357137 (Mich. Ct. App. Jul. 14, 2021). The Michigan Supreme Court denied leave to appeal that decision on March 8, 2022. *Stampone v. Kent Circuit Judge*, No. 163464 (Mich. Mar. 8, 2022).

Plaintiff also directly appealed his conviction and sentence to the Michigan Court of Appeals. *People v. Stampone*, No. 362865 (Mich. Ct. App.). That appeal remains pending. *See id.*, Case Information, https://www.courts.michigan.gov/c/courts/coa/case/362865 (last visited Jan. 16, 2024).

Finally, and most recently, Plaintiff filed another state habeas corpus petition in the Michigan Court of Appeals on May 3, 2023. *Stampone v. Kent Circuit Judge*, No. 366010 (Mich. Ct. App.). The Michigan Court of Appeals denied relief without prejudice to Plaintiff's pending direct appeal by order entered July 5, 2023. *See id.*, Case Information, https://www.courts. michigan.gov/c/courts/coa/case/366010 (last visited Jan. 16, 2024). That order was signed by Defendants Redford, Boonstra, and Yates.

It appears that Plaintiff attempted to file an application for leave to appeal that decision. *Id.* The Michigan Supreme Court's failure/refusal to accept Plaintiff's submission is the basis for his claims against Defendant Michigan Supreme Court and Defendant Deputy Clerk Clement.

The balance of Plaintiff's claims against this group of defendants relate to the kidnapping prosecution in the Kent County Circuit Court and the 63rd District Court, and proceedings in Kent County Probate Court.

Plaintiff's allegations relating to the criminal and probate proceedings account for half of the roughly four dozen defendants that Plaintiff has named. The other half were not involved in Plaintiff's criminal prosecution or the events that preceded that prosecution. The other half are MDOC officials,[2] and they are named as defendants because of the conditions of Plaintiff's confinement with the MDOC.

Plaintiff contends that these two groups of defendants (the defendants involved in his criminal prosecution and probate proceedings, and the MDOC defendants) have violated his constitutional rights, federal law, state law, and committed state-law torts against him. Plaintiff demands a trial by jury and he makes three specific requests for relief: first, he requests immediate release from prison; second, he asks the Court to order an investigation of the murder of Marta Jo; and third, he seeks judgment against the defendants in the amount of $100,000,000.

## II.    Unavailable Relief

### A.    Immediate Release from Prison

In recounting the history of Plaintiff's criminal prosecution, he offers several reasons that his conviction is unconstitutional and, therefore, several reasons he should be immediately released from prison. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate

---

[2] These defendants include the MDOC, Carson City Correctional Facility Warden Randee Rewerts, Officer Findlay, Sergeant Maiga, S. Reddin, "Classification" "Warehouse," Lieutenant Morris, Officer Harper, Officer S. Fleisher, Office C. Shinabarger, Staff Member Ms. Lyon, Librarian L. Loomis, Dr. Edgar, Officer Giles, Officer Farrell, Employee M. Brown, RGC-Charles Egeler Reception, Officer T. Hardrick, Lieutenant Reno, Carson City Correctional Facility, MDOC Director Heidi Washington, Deputy Director Jeremy Bush, and Officer White (herein collectively "the MDOC Defendants).

release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [42 U.S.C.] § 1983."). Plaintiff seeks relief under 42 U.S.C. § 1983, (Compl., ECF No. 1, PageID.6).[3] The relief of release, however, is not available to him under that statute.[4] Accordingly, Plaintiff has failed to state a claim for that relief.

---

[3] Plaintiff also suggests that he might be entitled to relief under Michigan Court Rule 6.004, (Compl., ECF No. 1, PageID.7, 8), Mich. Comp. Laws § 780.786A, (*id.*), Mich. Comp. Laws § 768.1, (*id.*, PageID.9, 11), Mich. Comp. Laws § 750.81 (assault and battery), (*id.*, PageID.45), and 18 U.S.C. § 351(e) (assault), (*id.*). Moreover, throughout the complaint Plaintiff makes reference to his state constitutional rights as well as state-law torts such as negligence, defamation, infliction of severe mental anguish and emotional distress, assault, unlawful eviction, harassment, conspiracy, slander, and false arrest. None of these other claims afford Plaintiff the relief of release from prison.

[4] Plaintiff also makes reference to habeas relief under 28 U.S.C. § 2254; however, the clear focus of his complaint is a civil action under 42 U.S.C. §1983. The Court has addressed his claims accordingly. Regardless of Plaintiff's intent, courts generally have been reluctant to allow hybrid civil rights/habeas actions, given that civil rights actions and habeas petitions have distinct purposes and contain unique procedural requirements that make a hybrid action difficult to manage. *See Spencer v. Barret*, No. 14-10823, 2015 WL 4528052, at *4 (E.D. Mich. July 27, 2015); *see also Moore v. Pemberton*, 110 F.3d 22, 24 (7th Cir. 1997) (discussing that the reasons for not allowing a prisoner to transform a § 1983 action into one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)); *Dunbar v. Rozen*, No. 1:18-cv-617, 2019 WL 3213757, at *2 (W.D. Mich. July 17, 2019) (holding that a "hybrid" action involving both civil rights and habeas claims "presents significant problems," and courts typically have directed prisoners to file separate actions (citing *Kirk v. Jablonski*, No. 18-cv-288, 2019 WL 1283009, at *1 (D.N.M. Mar. 20, 2019))); *Mittelstadt v. Wall*, No. 14-cv-423-jdp, 2014 WL 5494169, at *2 (W.D. Wisc. Oct. 30, 2014) (holding that prisoner "cannot pursue both habeas and § 1983 claims in a single lawsuit"). Plaintiff is free to file a separate habeas petition under 28 U.S.C. § 2254; however, the Court notes that if Plaintiff were to file such a petition at the present time it would be properly dismissed as unexhausted because the direct appeal of his conviction is still pending in the Michigan appellate courts.

## B.     Investigation of Marta Jo's Murder

Plaintiff contends that Defendants Amanns and Kramer are responsible for Marta Jo's death. He asks the Court to order an investigation of Marta Jo's murder. Plaintiff does not identify whom the Court should order to investigate Marta Jo's death. To the extent Plaintiff is asking the Court to order one of the defendants—a court, office, prison, judge, prosecutor, MDOC official, or law enforcement officer—to conduct the investigation, the Court cannot oblige. *See, e.g.*, *Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970) (stating "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties"); *Otero v. United States Att'y Gen'l,* 832 F.2d 141, 141 (11th Cir. 1987) (explaining that "[a] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another . . . [and] prosecutorial discretion may not be controlled by a writ of mandamus." (citations omitted)); *Inmates of Attica Corr. Fac. v. Rockefeller*, 477 F.2d 375, 382–83 (2d Cir. 1973) (holding that a federal court cannot compel state prosecutors to commence a prosecution).[5] Thus, Plaintiff has failed to state a claim for the requested relief of an order compelling an investigation or prosecution relating to Marta Jo's death.

---

[5] Moreover, although Plaintiff's complaint does not name any federal officials as defendants, the Court could not order federal officials to conduct such an investigation either. *See, e.g.*, *Jarrett v. Ashcroft*, 24 F. App'x 503, 504 (6th Cir. 2001) (noting that "[a] mandamus action may be brought under 28 U.S.C. § 1361 to compel an employee of the United States to employ a duty owed, but the duty owed must be mandatory and not discretionary . . . [t]here, mandamus cannot be used to compel the Attorney General or the United States Attorney to conduct investigations or prosecute . . ." (citations omitted)); *Ryon v. O'Neill*, 894 F.2d 199, 205 (6th Cir. 1990) (explaining that the court has been especially reluctant to issue the writ where it would cabin prosecutorial discretion and citing *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir.1970) (mandamus is not proper to compel the Attorney General or the United States Attorney to prosecute known civil rights violators, to alter the scope of their investigations, or to conduct particular investigations; "the judicial control sought by the plaintiffs regarding these two defendants is beyond the power of this court.")).

### III.    Misjoinder

#### A.  Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants

based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The core allegations in Plaintiff's complaint relate to his criminal prosecution and the events that led to that prosecution. The courts, judges, prosecutors, defense counsel, witnesses, and law enforcement officer named as Defendants all participated in Plaintiff's prosecution for kidnapping, the appeals of his conviction, the collateral attacks on his conviction, or the probate proceedings related to Plaintiff's victim.

The facts underlying Plaintiff's claims against the MDOC Defendants do not arise directly from his criminal prosecution, nor do they relate to the probate proceedings. Rather, on page 15 of his complaint, Plaintiff commences what appears to be an entirely separate and independent complaint against the MDOC and the MDOC's employees relating to the conditions of Plaintiff's confinement. (Compl., ECF No. 1, PageID.15–34.)[6]

---

[6] After page 34 of the complaint, Plaintiff's allegations jump around. For a few pages he returns to the criminal prosecution. He alleges that Attorney Bostic and his law firm did not properly represent Plaintiff in connection with the criminal prosecution (and/or appeals). At page 36, Plaintiff raises malicious prosecution claims against Prosecutor Defendants Becker, Bartlett, and Tarango. At page 37, Plaintiff shifts his allegations again to complain that the actions of Defendant Deputy Tanis and Witness Brittan Amann and others resulted in his false arrest and fabricated evidence. At page 39, Plaintiff turns his attention to Defense Attorney Steven C. Haehnel and his law firm. Thereafter, the two general categories of allegations are mixed, but they still do not appear to be related.

Looking at the timeline of events in Plaintiff's complaint, Plaintiff's allegations relating to the probate court proceedings appear to precede the allegations relating to his criminal prosecution. The allegations relating to the conditions of Plaintiff's confinement with the MDOC, of course occur after judgment in the criminal prosecution. Certainly, the facts alleged in support of Plaintiff's various attacks on the probate court, district court, and circuit court proceedings, all of which precede the allegations regarding Plaintiff's MDOC confinement, are the earliest allegations in the complaint.[7] (*See id.*, PageID.11.)

It is possible to identify at least some transactional relationship between Plaintiff's allegations against the various defendants who are tied to the probate and criminal proceedings. The connection is weakest between the probate court proceedings and the criminal proceedings, but there are at least some common defendants—the Amanns and Jordan Kramer—and the circumstances of Plaintiff's wife at that time were certainly relevant to the probate court proceedings and the criminal proceedings. But Plaintiff's allegations relating to the various court proceedings are transactionally *unrelated* to Plaintiff's allegations arising out of the conditions of his confinement with the MDOC.

Chronologically the claims relating to the conditions of Plaintiff's confinement might run in parallel to claims relating to his criminal appeals, but they involve entirely different defendants, and occurred at different places. Plaintiff's decision to lump all of these allegations into one document does not transform separate, subsequent events into events that arise out of the same transaction or occurrence.

---

[7] The analysis of joinder must start somewhere. By accepting the earliest factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint. The Court might alternatively look to the first allegations presented or the first defendants named. Each of those alternatives would yield the same result. Plaintiff's claims relating to court proceedings are the foundational allegations in his complaint.

Here, the claims alleged against the MDOC Defendants, are not transactionally related to Plaintiff's allegations regarding the probate or criminal court proceedings. Accordingly, the Court concludes that the defendants tied to the probate and criminal proceedings are properly joined because Plaintiff's claims against these Defendants arise out of arguably related transactions and occurrences. However, Plaintiff has improperly joined the MDOC Defendants.

### B.     Remedy

Because the Court has concluded that Plaintiff has improperly joined the MDOC Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute

an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, the misjoined claims involve events that occurred after July of 2022, when Plaintiff was sentenced. Thus, there appears to be ample time remaining in the period of limitation. Plaintiff has provided no basis for this Corut to conclude that he would suffer gratuitous harm if his claims against the MDOC Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop the MDOC Defendants from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs").

If Plaintiff wishes to proceed with his claims against the MDOC Defendants, he shall do so by filing new civil actions on the form provided by this Court, see W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is cautioned that the failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## IV.    Failure to state a claim

Having dismissed Plaintiff's claims for improper relief and Plaintiff's claims against misjoined defendants, what remains are Plaintiff's claims for money damages against the defendants who are tied to the probate or criminal proceedings. The Court must examine those claims under the PLRA to determine if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Color of State Law

Plaintiff names his court-appointed attorneys, Haehnel and Bostic (or their respective law firms), as Defendants. Plaintiff cannot show that his court-appointed attorneys Defendants Haehnel and Bostic (or their respective law firms) acted under color of state law. In *Polk Cty. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318–19 (footnotes omitted). This is true even of the state-appointed and state-paid public defender. *Id.* at 321. Once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. Even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather,

16

defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id.* The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g.*, *Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Def.*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Ct. of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Accordingly, because Plaintiff's defense attorneys and their respective firms did not act under color of state law, no claim under § 1983 can be maintained against them. Therefore, Plaintiff's claims against J. Nicholas Bostic and Bostic Associatiates and Steven C. Haehnel and Haehnel Law Firm are properly dismissed.

Similarly, Defendant Brittan Amann, by testifying in Plaintiff's trial or by seeking appointment as a guardian, or Benjamine Amann or Jordan Kramer by taking similar actions, did not act under color of state law. A person does not act under color of state law merely by resorting to the courts for relief in a civil case. *See Kelm v. Hyatt*, 44 F.3d 415, 421–22 (6th Cir.1995). Furthermore, a witness in a civil or criminal proceeding does not act under color of state law. *See Briscoe v. Lahue*, 460 U.S. 325 (1983). "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). Plaintiff's claims against these defendants are not actionable under § 1983, because the actions Plaintiff describes were not taken under color of state law. Therefore, Plaintiff's claims against Brittan Amann, Benjamine Amann, and Jordan Kramer are properly dismissed.

## B.       Judicial Immunity

Plaintiff names the various judges who were involved in his criminal prosecution and post-conviction challenges, as well as the probate proceeding as Defendants in this action. Judges Redford, Boonstra, Yates, Benson, Smolenski, and Murkowski certainly acted under color of state law; however, they enjoy immunity for the acts Plaintiff alleges. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11;[8] *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12; *Bright v. Gallia Cnty.*, 753 F.3d 639, 649 (6th Cir. 2014) (recognizing the difference between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter[,]" and noting that only the latter deprives a judge of judicial immunity).

Plaintiff's allegations fail to implicate either of the exceptions to judicial immunity. There is no doubt that the acts of Judge Smolenski relating to the early stages of Plaintiff's

---

[8] The *Mireles* Court made clear that immunity is not overcome even by allegations of bad faith, corruption, or malice, the sort of allegations Plaintiff makes in the present case. *Mireles*, 502 U.S. at 11.

criminal prosecution were judicial acts and within her jurisdiction. The same is true of the acts of Judge Benson with regard to the circuit court criminal proceedings. Judges Redford, Boonstra, and Yates acted judicially and within their jurisdiction when they denied Plaintiff's state habeas corpus petition. Judge Murkowski undertook judicial acts within his jurisdiction with respect to the guardianship and estate proceedings. Accordingly, Plaintiff may not maintain an action for monetary damages against these judicial defendants. 28 U.S.C. § 1915(e)(2)(B)(iii).

Plaintiff has failed to state a claim against Judges Redford, Boonstra, Yates, Benson, Smolenski, and Murkowski, and Plaintiff's claims against those defendants are properly dismissed.

### C.      Quasi-Judicial Immunity

Plaintiff names Deputy Clerk Julie Clement of the Michigan Supreme Court as a defendant. Plaintiff complains that Deputy Clerk Clement mishandled his attempts to appeal the Michigan Court of Appeals' denial of his state habeas corpus petition. The Michigan Court of Appeals denied Plaintiff's petition by order entered July 5, 2023. Order, *Stampone v. Kent Circuit Judge*, No. 366010 (Mich. Ct. App. July 5, 2023), (ECF No. 1-2). The case information for that matter discloses that on July 11, 2023, Plaintiff attempted to e-file a notice of appeal in the Michigan Court of Appeals. Case Information, *Stampone v. Kent Circuit Judge*, No. 366010 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/366010 (last visited Feb. 20, 2024). The attempt was rejected as improper, and Plaintiff was advised to proceed in the Michigan Supreme Court.

Plaintiff then mailed a notice of appeal to the Michigan Supreme Court. That notice was rejected by the Michigan Supreme Court. The notice was returned to Plaintiff with a cover letter signed by Defendant Clement. (ECF No. 1-1, PageID.54–55.) Plaintiff was advised that to

proceed he would have to file an application for leave to appeal the court of appeals' order on or before August 16, 2023. (*See id.*, PageID.54.) He did not.

Absolute judicial immunity is extended to non-judicial officers who perform "quasi-judicial" duties. *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (citations omitted) (stating "[i]t is well established that judges and other court officers enjoy absolute immunity form suit on claims arising out of the performance of judicial or quasi-judicial functions"). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). When considering whether an official is entitled to absolute immunity, the court "looks to the 'nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Buckley v. Fitsimmons*, 509 U.S. 259, 269 (1993)). "Overseeing the filing of civil case pleadings is a task that is integral to the judicial process[, and] . . . enforcing statutes and court rules governing the filing of pleadings is clearly a judicial act." *Smiles v. Royster*, No. 18-1440, 2018 WL 4998196, at *1–2 (6th Cir. Oct. 1, 2018) (citations omitted) (affirming district court's determination that the Michigan Supreme Court clerk and deputy clerk were entitled to quasi-judicial immunity for rejecting the prisoner's filings, first because of the failure to pay an outstanding fee balance and then, upon payment of the fee balance, because the submission was not filed within the forty-two day deadline under the Michigan Court Rules); *see also, e.g.*, *Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001) (citation omitted) (stating that "[w]hen a clerk files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction"); *Ortiz-Kehoe v. Royster*, No. 1:23-cv-532, 2023 WL 8798133, at *1 (W.D. Mich. Dec. 20, 2023) (adopting report and recommendation concluding that Michigan Supreme Court clerk and deputy

clerk were immune from claims relating to rejection of the prisoner's attempted challenge to the Michigan Court of Appeals' denial of habeas relief as improper and late); *Holt v. Hoffner*, No. 16-1303, slip order at 5 (6th Cir. Jan. 5, 2017) (affirming district court's preliminary dismissal, on grounds of quasi-judicial immunity, of prisoner's claim that Michigan Supreme Court clerk and deputy clerk improperly rejected the prisoner's original habeas action submitted for filing in the Michigan Supreme Court); *Pearson v. Oakland Cnty. Cir. Ct.*, No. 1:15-cv-22, 2015 WL 728475, at *4 (W.D. Mich. Feb. 19, 2015) (holding that the court clerk and staff were entitled to immunity for docketing the plaintiff's filings and rejecting pleadings that did not comply with court rules), *aff'd*, No. 15-1263 (6th Cir. Nov. 25, 2015).

To sum up, courts have afforded quasi-judicial immunity to court clerks who reject pleadings for failure to comply with the rules. The Michigan Supreme Court has discretion to review a decision of the Michigan Court of Appeals. *See Halbert v. Michigan*, 545 U.S. 605, 612 (2005) (citing Mich. Comp. Laws § 770.3(6)); *see also* Mich. Ct. R. 7.303(B). Plaintiff's "Notice of Appeal," (ECF No. 1-1, PageID.55), did not comply with the requirements of the Michigan Court Rules regarding appeals to the Michigan Supreme Court. Mich. Ct. R. 7.305. Defendant Clement so advised Plaintiff and informed him where he could acquire the proper forms. (July 18, 2023, Correspondence, ECF No. 1-1, PageID.54.) Plaintiff's submission was plainly improper under the rules and Defendant Clement rejected it for that reason. Defendant Clement was plainly acting on behalf of the Michigan Supreme Court when she returned Plaintiff's notice of appeal as improper. Under the authorities cited above, she is entitled to quasi-judicial immunity. Therefore, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Clement.

### D.    Sovereign Immunity

Plaintiff also names as defendants the Michigan Supreme Court, the Michigan Court of Appeals, the Kent County Circuit Court, the Kent County Probate Court, and the 63rd District Court. Additionally, Plaintiff names as a defendant the Kent County Prosecutor's Office.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). A state's Eleventh Amendment immunity from suit in the federal courts is in the nature of a jurisdictional defense. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974).

Under the Michigan Constitution, the judiciary is a separate and independent branch of state government. *See Jud. Att'ys Ass'n v. Michigan*, 586 N.W.2d 894, 897–98 (Mich. 1998). Each state court is part of the "one court of justice" established by the Michigan Constitution. Mich. Const. art. VI, § 1 ("The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house"); *see Smith v. Oakland Cnty. Cir. Ct.*, 344 F. Supp. 2d 1030, 1055 (E.D. Mich. 2004). Moreover, the Kent County Prosecutor's Office, when prosecuting state criminal

charges, is also an "arm of the state" and is entitled to Eleventh Amendment immunity. *Cady v. Arenac Cnty.*, 574 F.3d 334, 342–44 (6th Cir. 2009).

The Sixth Circuit has held that suits against Michigan courts are barred by Eleventh Amendment sovereign immunity. *See Abick*, 803 F.2d at 877. The Sixth Circuit decision is but one of numerous federal court holdings recognizing Eleventh Amendment immunity in suits brought against the state courts. *See Harmon v. Hamilton Cnty. Ct. of Common Pleas*, 83 F. App'x 766, 768 (6th Cir. 2003); *Metz v. Sup. Ct.*, 46 F. App'x 228, 236–37 (6th Cir. 2002); *Mumford v. Basinski*, 105 F.3d 264, 268–70 (6th Cir. 1997); *see also Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007); *Zabriski v. Ct. Admin.*, 172 F. App'x 906, 908 (11th Cir. 2006); *Wilson v. Puma County Superior Ct.*, 103 F. App'x 285, 286 (9th Cir. 2004); *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir.1995).

Furthermore, civil rights actions under 42 U.S.C. § 1983 may only be brought against a "person," and courts are clearly not persons within the meaning of the statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

For all of these reasons, Plaintiff has failed to state a claim against the Michigan Supreme Court, the Michigan Court of Appeals, the Kent County Circuit Court, the Kent County Probate Court, the 63rd District Court, and the Kent County Prosecutor's Office, and his claims against those defendants are properly dismissed.

### E.     Malicious Prosecution

Plaintiff alleges that prosecutors Becker, Bartlett, and Tarango and Detective Deputy Tanis maliciously prosecuted him. (*See, e.g.*, Compl., ECF No. 1, PageID.12, 36.) In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment, which is cognizable under § 1983. *Id.* at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007)) (assuming without deciding that

such a claim existed). The *Sykes* court held that, to succeed on a Fourth Amendment malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09; *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes*, 625 F.3d at 308–09); *Gregory v. City of Louisville*, 444 F.3d 725, 727 (6th Cir. 2006).[9] Plaintiff's claim necessarily fails with regard to the fourth element. His criminal proceeding has not been resolved in his favor. That resolution is not final because Plaintiff's direct appeal is ongoing; nonetheless, absent resolution in Plaintiff's favor, his present allegations fail to state a claim for malicious prosecution. Accordingly, Plaintiff's claims against Defendants Becker, Bartlett, Tarango, and Tanis are properly dismissed.

### F.      Official Capacity

Plaintiff names certain individual defendants in their respective official capacities, as well as their personal capacities: Michigan Supreme Court Deputy Clerk Clement; Michigan Court of Appeals Judges Redford, Boonstra, and Yates; Kent County Circuit Court Judge Benson; Defendants Brittan Amann, Benjamine Amann, and Jordan Kramer; and Kent County Probate Judge Murkowski. Plaintiff's "official capacity" claims against the Amanns and Kramer fails at the outset because he has not alleged that they hold any state office. Essentially, the failure to allege any facts supporting the assertion that the Defendants acted under color of state law compels the conclusion that they hold no state (or municipal) office. Accordingly, the Court

---

[9] Despite its label, a Fourth Amendment claim for malicious prosecution does not require that a Plaintiff demonstrate that the defendant acted with malice. *Sykes*, 625 F.3d at 309–10. In fact, under established Fourth Amendment jurisprudence, a defendant's intent is irrelevant to the analysis, which rests on a determination of reasonableness. *Id.*

concludes that Plaintiff has failed to state an official capacity claim against the Amanns or Kramer.

With regard to the other individuals named in their respective official capacities, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan courts. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Because the Michigan courts, as an arm of the state, enjoy sovereign immunity, an official-capacity defendant is also absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Accordingly, Plaintiff has failed to state a claim for monetary damages against these individuals in their official capacities.

### G.      State-Law Claims

Plaintiff indicates that the conduct of the defendants also violated his rights under the state constitution, state statutes, and state court rules. Additionally, Plaintiff uses terms that suggest he may be attempting to state claims against these defendants for state-law torts. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should

consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act and permitted under Federal Rule of Civil Procedure 21, the Court determines the following:

1. The MDOC defendants are misjoined. They will be dropped as defendants and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. Accordingly, Plaintiff's claims against the MDOC, Carson City Correctional Facility Warden Randee Rewerts, Officer Findlay, Sergeant Maiga, S. Reddin, "Classification" "Warehouse," Lieutenant Morris, Officer Harper, Officer S. Fleisher, Office C. Shinabarger, Staff Member Ms. Lyon, Librarian L. Loomis, Dr. Edgar, Officer Giles, Officer Farrell, Employee M. Brown, RGC-Charles Egeler Reception, Officer T. Hardrick, Lieutenant Reno, Carson City Correctional Facility, MDOC Director Heidi Washington, Deputy Director Jeremy Bush, and Officer White will be dismissed without prejudice.

2. Plaintiff has failed to state a claim that supports the relief of release from prison and he has failed to state a claim that would support an order compelling an investigation into the death of Marta Jo. Accordingly, those claims for relief will be dismissed.

3. Plaintiff has failed to state a federal claim for monetary relief against any of the remaining defendants. Accordingly, Plaintiff's claims against the Michigan Supreme Court, Michigan Supreme Court Deputy Clerk Julie Clement, Michigan Court of Appeals, the Michigan Court of Appeals Judges

James Robert Redford, Mark Boonstra, and Christopher P. Yates, the 17th Circuit Court, 17th Circuit Court Judge Curt A. Benson, Unknown Party (named as Prosecutor Office), Kent County Prosecutor Christopher Becker, Assistant Prosecutors Elizabeth A. Bartlett and Felix Tarango, Detective Deputy Michael Tanis, 63rd District Court, Judge Sara J. Smolenski, Attorney J. Nicholas Bostic, Bostic Associates, Attorney Steven C. Haehnel, the Haehnel Law Firm, Brittan Amann, Benjamine Amann, Jordan Kramer, the Kent County Probate Court, and Judge David Murkowski will be dismissed.

4. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, those claims will be dismissed without prejudice.

The disposition will resolve all claims against all parties.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 26, 2024                  /s/ Robert J. Jonker
                                            Robert J. Jonker
                                            United States District Judge